1  ROBERT C. SCHUBERT (S.B.N. 62684)
2  WILLEM F. JONCKHEER (S.B.N. 178748)
   AMBER L. SCHUBERT (S.B.N 278696)
3  SCHUBERT JONCKHEER & KOLBE LLP
   Three Embarcadero Center, Suite 1650
4  San Francisco, California 94111
5  Telephone: (415) 788-4220
   rschubert@sjk.law
6  wjonckheer@sjk.law
7  aschubert@sjk.law

8  *Attorneys for Plaintiff*
9

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

10            **UNITED STATES DISTRICT COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

12                  **EASTERN DIVISION**

13

14  STEVEN HERNANDEZ, Individually       Case No. 5:22-cv-01861
    and on Behalf of All Others Similarly
15  Situated,

16                                        **CLASS ACTION COMPLAINT**
              Plaintiff,
17
                                          **DEMAND FOR JURY TRIAL**
18       v.

19
    RADIO SYSTEMS
20  CORPORATION,

21
              Defendant.
22

23

24

25

26

27

28

**Class Action Complaint**
**Case No. 5:22-cv-01861**

Plaintiff Steven Hernandez ("Plaintiff"), on behalf of himself and all others similarly situated, by and through undersigned counsel, hereby brings this action against Defendant Radio Systems Corporation ("Radio Systems"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief based upon the investigation of their counsel.

## INTRODUCTION

1.      This is a consumer class action arising out of misrepresentations and omissions by Radio Systems in connection with its manufacture, sale, marketing, and advertising of shock collar products under the brand name PetSafe® (the "Shock Collar Products"). Shock Collar Products are devices that deliver electric shocks to household pets via a collar worn around the pets' necks. In an effort to extract money from unsuspecting consumers concerned over the well-being of their pets, Radio Systems manufactures, markets, distributes, and sells dozens of Shock Collar Products through its websites and nationwide retailers' physical stores and websites, while falsely claiming that the Shock Collar Products are "safe" and "harmless" tools for preventing unwanted behaviors.

2.      To conceal the true nature of the Shock Collar Products, Radio Systems uses neutral euphemisms to describe what being electrocuted by a shock collar feels like for a pet. Among the most popular terms that it uses to falsely describe a painful electric shock are "static correction," "surprise," "tickle," and "stimulation." Indeed, on the packaging of the Shock Collar Products, as well as on their website, Radio Systems prominently displays false claims regarding the safety of its products, while purportedly relying on scientific and empirical testing in claiming that the Shock Collar Products have been "proven safe," and are purportedly recommended by veterinarians and professional dog trainers.

3.      In reality, Shock Collar Products are far from safe and harmless. In fact,

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

the use of electric shocks is gravely dangerous to the pets' physical and psychological well-being.  Hundreds of documented cases—which Defendant is aware of—reveal that the use of shock collars can cause pets severe injuries, including, *inter alia,* skin ruptures, bruising, inflammations, skin burns, and infections. It has been tested, proven, and documented that the use of Shock Collar Products leads to psychological stress, anxiety, and depression caused by the repeated painful shocks administered in response to the pets' completely natural behaviors.

4.      Scientific literature further demonstrates that the use of Shock Collar Products leads to increased aggression and other significant and irreversible behavioral changes, rendering dogs less obedient, and even dangerously defiant. Unfortunately for unsuspecting consumers, Radio Systems has for years concealed the harsh truth about Shock Collar Products. Instead of telling consumers the truth, Defendant failed to disclose the dangerous properties of Shock Collar Products on their packaging, websites, and other marketing and advertising materials, which it uses to promote its products.

5.      Additionally, instead of being recommended by veterinarians and professional dog trainers—as Radio Systems falsely claims—the use of Shock Collar Products has been uniformly condemned by professional dog behaviorists, experts, trainers, and veterinarians as a cruel, dangerous, and ineffective way of modifying animal behavior. Indeed, countless domestic and international animal advocacy groups, including the People for the Ethical Treatment of Animals ("PETA") and the Humane Society of America, have issued public statements harshly criticizing the use of Shock Collar Products.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

6.      For example, PETA publicly denounced[1] the use of shock collars, by stating that: ***"[t]hese cruel devices physically hurt animals and can cause severe psychological problems as well."***[2] The Pet Professional Guild ("PPG"), America's leading animal advocacy group, likewise decried the use of electric shocks, opining that ***"electric shock in the guise of training constitutes a form of abuse towards pets[.]"***[3] Due to the "unacceptable harm and suffering" that shock collars cause to animals, these devices have been outlawed in a number of countries, including Wales, Scotland, Denmark, Switzerland, Germany, Sweden, Finland, Austria, and certain parts of Australia and New Zealand, and in some cases their use is subject to significant monetary fines and even prison sentences.

7.      To be sure, Radio Systems has known for years that the Shock Collar Products are not "safe" and "harmless," as they claim, yet they put their own financial interests before the welfare and well-being of consumers' household pets. Over the years, hundreds of complaints have been reported on Defendant's websites, informing it of the dangerous nature of the Shock Collar Products, including complaints of skin ruptures, burn marks, inflammation and skin infections developed as a result of the use of Shock Collar Products, as well as psychological traumas suffered by pets as a result of being electrocuted. Many of the complaining consumers included graphic images of their pets' injuries.

8.      Instead of disclosing the grave dangers and risks of using shock collars, Radio Systems actively concealed these facts, while continuing to promote, via

---

[1] *Do you approve of electric fences and shock collars,* available at https://www.peta.org/about-peta/faq/do-you-approve-of-electric-fences-and-shock-collars/ (last accessed on Sept. 14, 2022).
[2] *Id.* Here and hereinafter, all emphasis is added, unless otherwise stated.
[3] Pet Professional Guild, The Use of Shock in Animal Training, N. Tudge and S. Nilson, 2016, available at https://www.petprofessionalguild.com/shockcollars (last accessed on Sept. 14, 2022) ("PPG Statement on Shock Collars").

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

implied and express representations, that Shock Collar Products are "safe" and "harmless." In their marketing campaigns, Radio Systems fails to inform consumers of the physical and psychological dangers that Shock Collar Products pose to animals. As a result of its misrepresentations and omissions, Plaintiff Steven Hernandez and the proposed Class have purchased products that are different than those which they thought they were purchasing and ones which are not fit for their intended purpose. Had Radio Systems disclosed these material facts, Hernandez would not have purchased Shock Collar Products. Radio Systems was able to charge more than what their Shock Collar Products would have cost had they disclosed the truth about them.

9.     Plaintiff Hernandez brings this action on behalf of himself and other consumers who have purchased Shock Collar Products, in order to: (a) end the dissemination of Defendant's deceptive advertising messages; (b) correct the false and misleading perception Defendant has created in the minds of reasonable consumers through their misrepresentations and omissions; and (c) secure redress for consumers who have purchased one or more Shock Collar Products.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C §1332(d) because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Class members, and minimal diversity exists because some members of the proposed class and the Defendant are citizens of different states.

11.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. § 1965(a) because Defendant was engaged in the manufacturing, labeling, packaging, marketing, and sale of the Shock Collar Products in the State of California. A substantial portion of the wrongdoing alleged in this Complaint took

**Class Action Complaint**
**Case No. 5:22-cv-01861**

place in California; Defendant conducts business in California and otherwise avails itself of the protections and benefits of California law through the promotion, marketing, and sale of Shock Collar Products in the State; and this action arises out of or relates to these contacts because Plaintiff Hernandez and the Class purchased the Shock Collar Products in California.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial portion of the events and omissions giving rise to this action occurred in this judicial district including the purchase of Plaintiff Hernandez's Shock Collar Products, which occurred in this District.  Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## PARTIES

13.     Plaintiff Steven Hernandez is a natural person and citizen of the State of California. He resides in Rialto, California. Between February 2022 to May 2022, Plaintiff Hernandez purchased the following PetSafe products from the Amazon website: (1) one PetSafe Pet Pawz Away Outdoor Barrier for which he paid $109.95, (2) one PetSafe Pawz Away Extra Outdoor Pet Barrier Transmitter, for which he paid $78.95, (3) one PetSafe Pawz Away Extra Receiver Collar, for which he paid $54.95, and (4) one PetSafe Pawz Away Extra Indoor Barrier, for which he paid $54.95, and (5) the PetSafe Boundary Wire, for which he paid $42.95.

14.     In deciding to purchase the PetSafe Shock Collar Products, Plaintiff Hernandez saw and relied upon Defendant's misrepresentations. Specifically, when Plaintiff Hernandez viewed the phrase "proven safe, comfortable, and effective" on Defendant's marketing materials and also observed that the word "safe" was included in the product's brand name, he believed the Shock Collar Products were safe, harmless, and humane. Plaintiff Hernandez purchased the PetSafe products because he believed that the Shock Collar Products were safe, effective, harmless,

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

and an appropriate tool for training household pets based on the packaging and advertising of the products. Shortly after purchasing and using his Shock Collar Products, Plaintiff Hernandez noticed a sticky residue and foul smell around his dog's neck. He removed the Shock Collar from his dog and saw that a patch of fur was missing from his dog's neck. His veterinarian identified holes in his dog's neck that coincided with the placement of the inserts in the Shock Collar Product. After discovering the product's harmful effects, Plaintiff Hernandez stopped using the Shock Collar Products.

15. Defendant did not inform Plaintiff Hernandez of the true nature of the Shock Collar Products prior to his purchase. Had Plaintiff Hernandez known that the Shock Collar Product was not safe and harmless, he would either not have purchased the Shock Collar Product or would have paid substantially less for it. At present, Plaintiff Hernandez has concerns about purchasing the Shock Collar Product for his pet as he remains unsure as to whether the representations of the Shock Collar Products are, and will continue to be, false and misleading. In the future, Plaintiff Hernandez would be willing to purchase the Shock Collar Products if the products were in fact safe, harmless, and humane.

16. Defendant Radio Systems is a Tennessee corporation with its principal place of business at 10427 Petsafe Way, Knoxville, TN 37932. Radio Systems was founded in 1991. Radio Systems is a manufacturer, marketer, and a seller of a wide variety of pet supplies and accessories, including Shock Collar Products. Over the years, Radio Systems has generated and continues to generate significant revenue through the sale of Shock Collar Products. Radio System owns a variety of brands, through which it sells its Shock Collar Products, including PetSafe®, Invisible Fence®, SportDog®, and Premier Pet®. Radio Systems has marketed, distributed, and sold the Shock Collar Products to many thousand consumers in the United States

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

through nationwide retailers such as PetSmart and Petco, including through their physical stores as well as their respective websites.  Radio Systems also sells the Shock Collar Products directly to consumers nationwide through direct sales websites that are owned by Radio Systems, such as www.petsafe.com, www.invisiblefence.com, www.sportdog.com, and www.premierpet.com.  Radio Systems' brands' websites are virtual stores where consumers can view descriptions and pictures of the Shock Collar Products, make purchases, and have items shipped directly to their homes.

17.     Radio Systems makes occasional changes in product offerings (for example, discontinuing or introducing new products or varieties), and product labeling and packaging.  Regardless of such changes, however, Radio Systems has labelled, and continues to label, its Shock Collar Products with various safety claims and claims that deceptively represent that Shock Collar Products are safe and harmless when they are not.

18.     Radio Systems is a wholly owned subsidiary of investment firm Clayton Dubilier & Rice, a private investment firm incorporated in Delaware with its principal place of business at 375 Park Avenue, New York, NY 10152. In May 2020, Clayton Dubilier & Rice announced its plan to acquire Radio Systems. In July 2020, the acquisition closed whereby Radio Systems became wholly owned entity of Clayton Dubilier & Rice.

**SUBSTANTIVE ALLEGATIONS**

19.     Shock collars, also known as e-collars, bark collars, and remote training collars, are pet collars that deliver electrical shocks of varying intensity and duration to the neck of a household pet via a radio-controlled electronic device incorporated into the collar. The majority of shock collars available on the market fall into three categories: (i) collars that are part of an electronic pet containment systems (known

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1   as electric fences); (ii) collars used as bark control; and (iii) collars that are

2   controlled remotely with a handheld device.

3        20.    Animal shock collars are marketed by Defendant as appropriate tools

4   for animal behavior modification in the context of training, obedience, recall, and

5   hunting and also as containment within certain boundaries, both inside and outside.

6   Shock collars are premised on the idea that when a dog engages in an unwanted

7   behavior—whether it be barking, chasing after other animals, wandering off the

8   owners' property, and/or biting—the owner is able to extinguish that behavior by

9   delivering to the pet an electric shock, either through a handheld remote device or

10  via an automatically generated impulse. After being painfully electrocuted, the pet is

11  expected to associate the unwanted behavior with the pain, and therefore avoid

12  engaging in the shock-triggering behavior.

13       21.    Despite that electric shocks have historically been used only in

14  laboratories in the context of animal behavioral studies as a method of inducing pain

15  and stress on the studied animal, in the last decade, they have entered the

16  commercial pet industry in a form of shock collars and are widely sold across the

17  United States for household use.

18       22.    Large national retailers, including PetSmart and Petco, have sold more

19  than a dozen different types of shock collars, including Shock Collar Products

20  manufactured by Radio Systems.  Defendant generates millions of dollars from the

21  marketing and sale of Shock Collar Products through its national retailers and

22  Defendant's websites.

23

24       **A. Radio Systems' False and Deceptive Marketing Campaign.**

25       23.    Radio Systems has engineered a marketing campaign focused on

26  representations that Shock Collar Products are appropriate tools for controlling pets'

27  behavior. In an effort to assuage consumers' concerns over their pets' safety and

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

comfort, in their marketing and advertising materials, it claims Shock Collar Products are "safe" and "harmless" while failing to disclose the grave physical dangers they pose to the health of household pets. To give credence to its false marketing and advertising claims, Radio Systems purports to rely on scientific and empirical testing in claiming that Shock Collar Products have "been ***proven safe,*** comfortable, and effective."

24.     To conceal the truth about the harmful propensities of Shock Collar Products, Radio Systems uses neutral euphemisms to describe what being electrocuted feels like for a domestic pet. Some of the terms that it uses to falsely describe a painful electric shock are terms such as "static correction," "vibration," "tickle," and "stimulation."  These claims are prominently displayed on the packaging of Shock Collar Products as well as Radio Systems' websites, and further bolster its false claims of safety and harmlessness.

25.     Radio Systems conceals from consumers that being electrocuted is a dangerous and painful experience for pets. For example, on the packaging and in its marketing materials, Radio Systems describes the pets' experience of being electrocuted by a shock collar as being "persuaded" or "reminded" of an existing boundary or an unwanted behavior, as opposed to being punished, frightened, or otherwise physically hurt. Furthermore, to account for pets' differing pain-thresholds, which allow certain breeds and pets to withstand more pain caused by an electric shock, Radio Systems misleadingly refers to this phenomenon as the dog's "temperament" or "stubbornness."  By so doing, it conceals the truth about the level of pain that Shock Collar Products are capable of inducing on a household pet and the pet's ability to mask and withstand different levels of pain.

26.     However, an overwhelming body of scientific research confirms that shock collars are not "safe, comfortable, and effective," and instead are dangerous,

Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

painful and far less effective than other training methods. To be sure, no scientific basis exists supporting Radio Systems' marketing claims, rendering its marketing statements unsubstantiated and false. In its deceptive marketing campaign, Radio Systems goes as far as to claim that its training methods have purportedly been "recommended by veterinarians, professional dog trainers, behaviorists, and other pet experts." Nothing can be further from the truth. In reality, a consensus exists among dog professionals, veterinarians, dog behaviorists, and domestic and international animal advocacy groups that shock collars "should no longer be part of the current pet industry culture of accepted practices, tools or philosophies."[1]

27. In reality, and unbeknownst to the consumers, the use of Shock Collar Products causes animals severe physical pain and injuries, including skin ruptures and inflammations, infections, skin burns and bruising as well as undue anxiety, confusion, and depression, which can lead to gastrointestinal disorders and irreversible changes in the pets' heart rate and respiration. Among the well-documented negative effects of being electrocuted by Defendant's Shock Collar Products is an increase in aggression in dogs as well as other unwanted behaviors, rendering dogs less obedient and even aggressive, and the training with Shock Collar Products less effective than any positive reinforcement training. Radio Systems fails to disclose these harsh truths about Shock Collar Products on its packaging, websites, or marketing materials.

28. As described herein, Defendant's representations contained on the packaging of the Shock Collar Products, Defendant's websites, and other marketing materials are false and misleading because they:

      a. Misrepresent the physical pain, harm, and suffering that Shock Collar Products cause to household pets;

---

[1] *See* PPG Statement on Shock Collars.

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

b. Misrepresent the dangers and risks of severe physical harm and injury associated with the use of Shock Collar Products;

c. Misrepresent the dangers and risks of irreversible psychological damage, including anxiety, stress, and depression associated with the use of Shock Collar Products;

d. Misrepresent the dangers and risks of increased aggression in dogs and the emergence of behavioral problems associated with the use of Shock Collar Products;

e. Misrepresent that Shock Collar Products are considered humane or are recommended by industry experts.

**B. Radio Systems' Misrepresentations about Shock Collar Products on Its Packaging, Websites, and Advertising.**

29.     Radio Systems manufactures, markets, and sells a variety of wireless and in-ground electric fence systems under several brand names, including PetSafe®, Invisible Fence®, SportDog®, and Premier Pet®. Regardless of the type of product, Radio Systems uniformly labels these products with claims promising safety and comfort and warranties that the use of Shock Collar Products is humane and recommended by industry experts.

30.     Radio Systems fails to disclose the safety risks, including physical and psychological harm these devices pose to the household pets, and the cruelty behind the fact that the household pet is being painfully electrocuted. The following false and deceptive claims appear on the packaging, websites, and advertising of Shock Collar Products manufactured by Radio Systems and sold by nationwide retailers.

31.     The packaging of PetSafe® wireless and in-ground electric fence systems expressly warrants that the Shock Collar Product are "proven safe," prominently displaying the following statement on the products' packaging:

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

Will it hurt my pet?

**NO.** The correction is delivered when a pet crosses the established boundary zone. It is designed to get your pet's attention, but not punish him. ***This method has been proven safe and will not harm your pet.***

32.     Defendant makes additional deceptive claims regarding the products' qualities, including, among other claims, the following statements that appear on the product packaging and product manuals:

- "[the product] ***has been proven safe and effective***"
- "[the static correction] is designed to get your pet's attention, but not to punish him. This method has been proven safe and will not harm your pet."
- "[The electric] sensation is similar to walking across carpeting, then touching a door knob. ***This method has been proven safe and will not harm your pet***."
- "[T]he collar will issue a ***safe***, but startling static correction"
- "While ***harmless***, the correction will persuade [the pet] to stay in the containment area you have established"

33.     PetSafe's website makes additional marketing and advertising claims that further bolster those appearing on the products' packaging, including, the following:

- "[pets] can ***enjoy safely*** playing off-leash"
- "keep your pet ***safe*** in your yard"

34.     Product manuals posted on PetSafe's website do not provide any clarifying information. Rather, these materials make additional misleading claims regarding the safety of PetSafe electric containment fences, including claims that purport to rely on empirical testing, such as that Shock Collar Products have "***been***

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

*proven safe,* comfortable, and effective."

35.     As demonstrated below, Radio Systems' pervasive advertisements representing that their Shock Collar Products are "safe" and "harmless" are materially deceptive, false, and misleading in that they fail to disclose the grave physical and psychological harm shock collars pose to consumers' pets. The statements about safety omitted from the packaging of the Shock Collar Products include, but are not limited to the following:

a.  The physical pain and suffering caused by being electrocuted by Shock Collar Products;

b.  The dangers of severe physical harm and injury associated with the use of Shock Collar Products, including the risk of skin burns, inflammation, skin ruptures, infections, and other severe physical damage;

c.  Psychological suffering and irreversible damage, including stress, anxiety, and depression associated with the use of Shock Collar Products;

d.  The danger of increased aggression and the emergence of behavioral problems associated with the use of Shock Collar Products;

e.  The lack of any scientific support, peer reviewed studies and/or scientific testing, establishing that Shock Collar Products are "safe" and "harmless."

**C.     Published Studies Confirm the Dangers and Risks of Shock Collar Products.**

36.     Contrary to Defendant's false and misleading marketing claims, peer-reviewed publications and scientific research demonstrates that the use of electric shock collars cause animals physical pain and harm, and carries with it significant

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

risk of injury, ranging from burns, skin ruptures, inflammation, bruising, and skin infections to cardiac fibrillation, inflamed thyroid, and irregular heart rate and salivation. Several peer reviewed studies noted below have concluded that shock collars cause undue anxiety, confusion, and depression caused by repeated shocks, which can lead to changes in a dog's respiration rate and gastrointestinal disorders.

37.     An overwhelming body of scientific research confirms that being trained through electric shock is a stressful and a painful experience for dogs. For example, a 2004 study published in the Applied Animal Behaviors Science by M.B.H. Schilder and J.A.M. van der Borg ("Schilder and Borg 2004 Study") focused on finding occurrences of pain, fear, avoidance, pain-induced aggression, and submission as well as the long-term impact of shocks.[1]

38.     The study concluded that electric "**shocks elicit fear and pain responses**" [that] "**are not just a nuisance, but are really painful**" and "**may sometimes be perceived as a traumatic event by a dog**."[2] The same study concluded that training with shock collars caused long-lasting stress effects where dogs have learned "that the presence of their owner (or his commands) announces reception of shocks, even outside of the normal training context."[3]

39.     Another study conducted in 2006 investigated the levels of stress on dogs caused by the use of electric shock collars.[4]  The study concluded that dogs who received an electric shock after disobeying a recall command exhibited a 160%

[1] M. Schilder, & J. van der Borg (2004). Training dogs with help of the shock collar: short and long term behavioural effects, Applied Animal Behaviour Science, 85 (3-4), 319-334 DOI: 10.1016/j.applanim.2003.10.004.
[2] Id. at 331, 333.
[3] Id. at 319.
[4] E. Schalke, J. Stichnoth, S. Ott, & R. Jones-Baade, (2007). Clinical signs caused by the use of electric training collars on dogs in everyday life situations, Applied Animal Behaviour Science, 105 (4), 369-380 DOI: 10.1016/j.applanim.2006.11.002.

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

increase in relative cortisol values, an established measure of stress in dogs. Additionally, dogs who received electric shocks arbitrarily, i.e., unpredictably and out of context, exhibited up to a 327% increase in relative cortisol values.[1] Thus, "poor timing in the application of high-level electric pulses [which is frequently associated with misuse of handheld remote shock collars] means there is a high risk that dogs will show severe and persistent stress symptoms."[2]

40.     The use of shock collars has time and again been demonstrated to cause psychological stress, including severe anxiety and depression. For example, two wide-ranging animal studies commissioned by the United Kingdom in 2013[3] examined the impact of the use of remotely controlled shock collars on the welfare of dogs. Consistent with prior research, these studies confirmed that the use of electric shocks lead to increased levels of salivary cortisol and "even with best practice as advocated by collar manufacturers and trainers, there were differences in the behaviour of dogs that are consistent with more negative emotional states (including anxiety and aversion) in some dogs trained with e-collars."[4]

41.     A robust body of scientific literature further shows that the use of electric shock collars is directly linked to increased aggression. As discovered in a 2000 study by Richard Polsky,[5] dogs who were trained with the use of shock collars

---

[1] *Id.* at 379.

[2] *Id.*

[3] Defra AW1402 (2013) Studies to assess the effect of pet training aids, specifically remote static pulse systems, on the welfare of domestic dogs. University of Lincoln / University of Bristol / Food and Environment Research Agency. Final report prepared by Prof. J. Cooper, Dr. H. Wright, Prof. D. Mills (University of Lincoln); Dr. R. Casey, Dr. E. Blackwell (University of Bristol); K. van Driel (Food and Environment Research Agency); Dr. J. Lines (Silsoe Livestock System).

[4] *Id.* at 16.

[5] R. Polsky (2000), Can Aggression in Dogs Be Elicited Through the Use of Electronic Pet Containment Systems?, Journal of Applied Animal Welfare

**Class Action Complaint**
**Case No. 5:22-cv-01861**

Schubert Jonckheer & Kolbe LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

had a higher prevalence of attacking people while an electric fence system was activated.[1] The study also found that shock-induced aggression was typically intense and vicious with repeated bites, and that aggression induced by shock tends to be without the warning signals that dogs usually give when prompted to aggression by external events.[2]

42.    Radio Systems fails to disclose any of these dangers associated with Shock Collar Products.

**D. Because of the Dangers Associated with Shock Collars, Animal Advocacy Groups Uniformly Condemn Their Use.**

43.    In an attempt to assuage consumers' concerns over the welfare of their pets, Defendant falsely promotes the use of Shock Collar Products as "safe" and "harmless." To give credence to these false claims, Defendant points to purported recommendations by dog trainers and other professionals, by claiming that Shock Collar Products are "recommended by veterinarians, professional dog trainers, behaviorists, and other pet experts."

44.    In reality, however, industry professionals as well as animal advocacy groups and dog experts uniformly condemn the use of shock collars for any purpose due to the risks associated with their use. For example, PETA strongly opposes any forms of electric shock collars and has called for the ban of these devices. On its website,[3] PETA explains:

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

---

Science, 3(4), 345-357, http://www.dogexpert.com/wp-content/uploads/2012/05/Electronic-fences.pdf.

[1] *Id.* at 353-355.

[2] *Id.*

[3] *Do you approve of electric fences and shock collars?*, PETA, https://www.peta.org/about-peta/faq/do-you-approve-of-electric-fences-and-shock-collars/ (last accessed on Sept. 15, 2022).

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

Electronic fences and shock collars electrically shock dogs when they cross an invisible line, bark, or don't respond to a command. ***These cruel devices physically hurt animals and can cause severe psychological problems as well. Companion animals should not have to live in fear of receiving electric shocks for normal behavior, such as barking.*** Positive training methods, in which dogs are rewarded for what they do right, are kinder and more effective.

45.     The Humane Society of The United States likewise publicly condemned the use of shock collars, stating on its website:[1]

***[C]ollars that rely on physical discomfort or even pain to teach a dog what not to do, are not a humane option.*** While they may suppress the unwanted behavior, they don't teach the dog what the proper behavior is and ***they can create anxiety and fear, which can lead to aggression***.[2]

46.     Concerns over the use of shock collars led numerous countries, including Wales, Scotland, Denmark, Switzerland, Germany, Sweden, Finland,

---

[1]  *Dog collars*, THE HUMANE SOCIETY OF THE UNITED STATES, https://www.humanesociety.org/resources/dog-collars (last accessed on Sept. 21, 2022).

[2]  Dozens of other domestic and international institutions for the protection of animals have publicly spoken against the use of shock collars as inconsistent with animal welfare, including, among others, the following institutions: The Society for the Prevention of Cruelty to Animals ("ASPCA") ("[h]umane training does not inflict unnecessary distress or discomfort on the pet."); British Small Animal Veterinary Association (2019) ("Shocks and other aversive stimuli received during training may not only be acutely stressful, painful and frightening for the animals, but may also produce long term adverse effects on behavioural and emotional responses."); New Zealand Veterinary Association (2018) ("E-collars have the potential to harm both the physical and mental health of dogs. They are an aversive training method that have in some studies been associated with significant negative animal welfare outcomes."); European Society of Veterinary Clinical Ethology (2017) ("E-collar training is associated with numerous well documented risks concerning dog health, behavior, and welfare. Any existing behaviour problem is likely to deteriorate or an additional problem is likely to emerge, when such a collar is used by an unqualified trainer [.]").

**Class Action Complaint**
**Case No. 5:22-cv-01861**

Austria, and certain parts of Australia and New Zealand, to ban the use of shock collars in recent years. Many of these countries' legislators have published harsh, but truthful words regarding the use of shock collars.

47.     For example, in connection with instituting a "strict guidance" on the use of shock collars in Scotland in January 2018, Scotland's Environment Secretary Roseanna Cunningham warned that "Anyone found causing pain to dogs through the use of collars or other devices can be prosecuted as they deserve."[1] In the Netherlands, the ban on shock collars was announced in or about April 2019, and its use is subject to €20,000.00 fine and three-year prison sentence.[2]

**E. Radio Systems Knows That Shock Collar Products Are Dangerous and Harmful.**

48.     Radio Systems has known for many years that the Shock Collar Products posed an unreasonable risk of harm to Plaintiff's and the proposed Class members' household pets. During all relevant times, hundreds of consumers have complained about the safety of these products, by posting complaints and product reviews after their household pets got injured as a result of being electrocuted by the Shock Collar Products. The following complaints—which represent only a small sample of those submitted on Defendant's websites—evidence the grave dangers that Shock Collar Products pose to household pets, of which Defendant is, and has been, aware, yet failed to inform consumers:

- On July 10, 2019, a dog owner posted the following review and a picture on Amazon website relating to PetSafe Basic Bark Collar:

[1] *Scotland to ban electric shock dog collars*, BBC, Jan. 24, 2018, https://www.bbc.com/news/uk-scotland-scotland-politics-42807728.

[2] *Netherlands to ban shock collars for dogs, limit breeding of 'designer cats'*, NL TIMES, Apr. 4, 2019, https://nltimes.nl/2019/04/04/netherlands-ban-shock-collars-dogs-limit-breeding-designer-cats.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

"DO NOT BUY THIS!!!!!!! *Literally it burned a hole in my dogs neck!* Absolutely horrible product!!! Don't buy!!!"[1]



- Another dog owner posted a review and a picture on Amazon relating to PetSafe Basic Bark Collar on May 9, 2017, stating: "I am not sure what happened but *this collar physically harmed my dog. I believe the shocks burned her to the point where she is missing hair and was bleeding. The hair around the area is also brown as though it had been burned.* I feel so bad for my dog. I do not recommend buying this."[2]



---

[1] Amazon Customer Review, AMAZON, https://www.amazon.com/gp/customer-reviews/RDH9D3BFE140G/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B0002C7FHC (last visited Sept. 27, 2022).

[2] Amazon Customer Review, AMAZON, https://www.amazon.com/gp/customer-reviews/R1YFCURFVHFE3W/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B0002C7FHC (last visited Sept. 23, 2022).

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

- A dog owner who purchased PetSafe Wireless containment system left the following review on Amazon on August 16, 2018: "Went through the process to train my GSD with the containment system. When I walked outside the boundaries to talk to some people walking near my property my dog couldn't resist and attempted to leave the yard. ***When she stayed too far from the boundary the shock kicked in and my dog started crying in pain trying to escape the shocking.*** Afterwards, I couldn't get her to leave the porch and she just wanted to stay inside the house. She was afraid to go outside. I've used shock collars in training her previously but this collar pretty much shocked her severely and continuously."[1]

- A dog owner who purchased Radio Systems' SportDog® bark collar left the following review on Amazon on July 6, 2022: "I carefully read the instructions and even tested it according to the directions. I placed this on my 60lb lab and **within an hour of her having it on, (not too tight!) my dog yelped and after looking her over, realized the collar shocked her and burnt her**. I immediately took it off and will NEVER put it back on her! I saw on previous reviews that if you leave this on for long periods of time it could burn but evidently an hour is too long."[2]

- Another dog owner reported on Chewy's website on March 16, 2022 regarding PetSafe bark collar: "This product **shocked my dog so hard, she looked like she was struck by a car**. She only barked 2x, and flew back 3 ft. yelping. I felt awful. It needs more warnings and less shock or more gradual increases."[3]

- Another dog owner reported on June 12, 2020: "From the

---

[1] Amazon Customer Review, AMAZON, https://www.amazon.com/gp/customer-reviews/R1SPOK2PI5HV7B/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B0001ZWZ8O.

[2] Amazon Customer Review, AMAZON, https://www.amazon.com/gp/customer-reviews/R999P0CQ274V8/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B07T4LGXC6.

[3] Chewy Customer Review, CHEWY, https://www.chewy.com/petsafe-static-basic-waterproof-dog/dp/48564.

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

description I thought this would not actually shock my dog. Their description is: 'slowly increasing in static correction levels until he stops barking' but it did shock her and it must have been severe because she screamed. So, I dragged the collar across the floor as it recommended to see the shock value and I can tell you it was a lot. I have a multi-Pooh and she's 12 pounds and I have the small collar. Now she is very fearful and runs away from me when I pick up the collar. I will find a better way to keep her from barking and change her behavior. ***This seems cruel. Maybe you should call it what it is: a shock collar*.***"[1]

- Another dog owner who purchased the SportDog® bark collar wrote on January 21, 2020 : "At the lowest setting, it shocked my dog so much he wouldn't stop screaming. But, this only further triggered the collar. So there was a continuous loop of screaming and shocking. It only ended because I got the collar off. ***Honestly the worst thing that happened to my dog. Even if you're heartless, how is the sound of screaming better than barking.*** DON'T BUY![2]

49.   Countless other consumer reviews revealing the dangerous nature of the Shock Collar Products were posted on Defendant's websites and on the websites of other national retailers, such as Amazon and Chewy, clearly putting Defendant on notice of the physical and the psychological harm the Shock Collar Products cause to Plaintiff's and Class members' household pets as well as the lack of transparency regarding the true nature of the Shock Collar Products.

50.   Indeed, many industry experts publicly voiced their concerns over the deceptive nature of Radio Systems' advertising, marketing, and labelling practices. For example, Dr. Polsky, a renowned animal behavior expert witness, observed that ***"manufacturers need to acknowledge the risks involved and make consumers***

---

[1] Chewy Customer Review, CHEWY, https://www.chewy.com/petsafe-static-basic-waterproof-dog/dp/48564.

[2] Chewy Customer Review, CHEWY, https://www.chewy.com/sportdog-nobark-sbc-r-waterproof/dp/158100.

**Class Action Complaint**
**Case No. 5:22-cv-01861**

***aware that the systems are not foolproof and that some dogs could attack a person as a result of having received electric shock.***"[1]

51.    The PPG and the Association for Force Free Pet Professionals made a similar observation:

> ***[M]arketers like to use neutral euphemisms to disguise the harsh reality of shock collars.*** They are often called "e-collars," "remote collars," "training collars" and other benign terms. In a similar way, the painful shock delivered to the dog is referred to in as a 'tap,' a 'tingle,' 'stimulation,' e-touch' or anything to ***obscure the fact that an electrical shock is being sent through the skin and nerves of the body***.[2]

52.    Additionally, national retailers of Radio Systems' products have expressed concern over the harmful effects of Shock Collar Products. In 2020, Petco, a well-known, national pet retailer that previously sold Shock Collar Products, banned the sale of these products in its 1,500 retail stores.[3] In a statement condemning the use of Shock Collar Products, Petco's CEO Ron Coughlin stated: "Electricity is fine for your microwave, but not fine for your pets, so we shouldn't sell these things."[4] He also acutely noted that most consumers who purchase Shock Collar Products are just "regular consumers" who may not understand the true harms associated with these products.[5]

---

[1] Polsky, *supra* note 13, at 356.

[2] *The Shocking Truth—A PPG Member Educational Resource*, PET PROFESSIONAL GUILD, http://www.petprofessionalguild.com/resources/Documents/The%20Shocking%20Truth.pdf.

[3] Jen Reeder, *Petco stops selling 'inhumane' shock collars and calls on others to join them*, TODAY (Oct. 7, 2020), https://www.today.com/pets/petco-stops-selling-shock-collars-promotes-stoptheshock-movement-t193573.

[4] *Id.*

[5] *Id.*

---

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

53.     Despite having knowledge that the Shock Collar Products are inherently dangerous for household pets, Radio Systems nonetheless expressly and impliedly represented that Shock Collar Products were safe and harmless. Unfortunately for the unsuspecting consumers, none of the instructions on the Shock Collar Products' packaging nor in other marketing material informed Plaintiff and the Class that using Shock Collar Products poses a significant risk of serious physical harm and injury. Nowhere does Defendant disclose the truth—that the Shock Collar Products are dangerous products that should not be used on household pets as a method of training, containing, or punishing a household pet. Instead of properly warning consumers, Defendant continues to falsely represent that the Shock Collar Products are "safe" and "harmless."

54.     As a result of Defendant's omissions and representations, Plaintiff and the Class members purchased an inherently unsafe and dangerous product that is other than as advertised and has caused many Class members, including Plaintiff, to incur costly veterinarian bills and other expenses, including overpaying for the Shock Collar Products, which Plaintiff and the Class would not have bought (or would have paid less for) had they known of their dangerous properties.

55.     Radio Systems advertised the Shock Collar Products as "safe," "effective," and "harmless" and failed to warn consumers that the Shock Collar Products may cause serious and irreversible physical and psychological harm to their pets. Plaintiff and Class members purchased the Shock Collar Products reasonably believing that the products were safe for their intended purpose.

56.     The danger presented by the Shock Collar Products is a material fact. The defect poses an unreasonable safety risk to consumers' dogs, and Plaintiff would not have purchased the product had he known that it was dangerous and could cause serious and irreversible physical and psychological harm to his dogs.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

57.     Defendant's omissions and misrepresentations were a material factor in influencing Plaintiff's decisions to purchase the Shock Collar Products, and Defendant received, and continues to receive, large profits from their deceptive marketing and sale of the Shock Collar Products.

## CLASS ACTION ALLEGATIONS

58.     Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following class:

> All persons who purchased one or more Shock Collar Products in the State of California.[1]

59.     Within the class there is one subclass for purposes of Plaintiff's claims under the Consumer Legal Remedies Act, defined as follows (the "Subclass"):

> All persons who purchased one or more Shock Collar Products in the State of California for personal, family or household purposes.

60.     The Class and Subclass are sufficiently numerous, as they include thousands of persons who have purchased the Shock Collar Products. Thus, joinder of such persons in a single action or bringing all members of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure. The disposition of the Class and Subclass members' claims in this class action will substantially benefit both the parties and the Court.

61.     The Class and Subclass are readily ascertainable through Defendant's

---

[1] Specifically excluded from this Class is Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

business records. Notice can be provided to Class and Subclass members by publication of notice by the Internet, radio, newspapers, and magazines.

62.     There are questions of law and fact common to the Class and Subclass for purposes of Federal Rule of Civil Procedure 23(a)(2). Defendant's advertising, marketing, labeling, and promotional practices were supplied uniformly to all members of the Class and Subclass, so that the questions of law and fact are common to all members of the Class and Subclass. All Class and Subclass members were and are similarly affected by having purchased the Shock Collar Products for their intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Class and Subclass.

63.     Plaintiff asserts claims that are typical of the claims of the entire Class and Subclass for purposes of Federal Rule of Civil Procedure 23(a)(3). Plaintiff and all Class and Subclass members have been subjected to the same wrongful conduct because they have purchased Shock Collar Products that do not possess the benefits that Defendant represents. Plaintiff and the Class and Subclass have thus all overpaid for Shock Collar Products and/or purchased the Shock Collar Products that they otherwise would not have.

64.     Plaintiff will fairly and adequately represent and protect the interests of the other Class and Subclass members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class or Subclass members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent him. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

65.     Class certification is appropriate under Federal Rule of Civil Procedure

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

23(b)(2) because Defendant has acted on grounds that apply generally to the Class and Subclass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and Subclass as a whole. Defendant's advertising, marketing, labeling, and promotional practices were supplied uniformly to all members of the Class and Subclass.

66.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class and Subclass. Among these common questions of law and fact are:

a. Whether Defendant's Shock Collar Products are unmerchantable because they present a danger and medical hazard when used in accordance with their label instructions;

b. Whether Defendant knew or should have known the Shock Collar Products cause harm to Class and Subclass members and their dogs;

c. Whether Defendant knew or should have known that the Shock Collar Products are inherently dangerous and can cause serious injury in the normal course of use;

d. Whether Defendant has a duty to inform Plaintiff and Class and Subclass members that the Shock Collar Products may cause harm to Class and Subclass members and their dogs;

e. Whether Defendant's omissions or representations concerning the safety and appropriate uses of the Shock Collar Products is likely to deceive;

f. Whether Defendant's alleged conduct violates public policy;

g. Whether the alleged conduct constitutes violations of the laws asserted herein;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

h. Whether Defendant engages in false or deceptive advertising;

i. Whether Plaintiff and Class and Subclass members have sustained monetary loss and the proper measure of that loss;

j. Whether Plaintiff and Class and Subclass members are entitled to restitution, disgorgement of Defendant's profits, declaratory or injunctive relief; and

k. Whether Plaintiff and Class and Subclass members are entitled to an award of compensatory damages.

67. Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy. Class and Subclass members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

68. Because of the nature of the individual Class or Subclass members' claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore appropriate, the superior method of proceeding, and essential to the interests of justice insofar as the resolution of Class or Subclass members' claims is concerned. Absent a representative class action, Class and Subclass members would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains.

69. Even if separate actions could be brought by individual members, the resulting multiplicity of lawsuits would cause undue hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent rulings which might be dispositive of the interests of the other Class or Subclass members who are not parties to the adjudications and/or may substantially impede their ability to

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  protect their interests.

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
***On Behalf of Plaintiff Hernandez and the Subclass***

70.    Plaintiff re-alleges and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

71.    Plaintiff brings this claim individually and on behalf of the Subclass against Defendant.

72.    This claim is brought under the Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA"). Plaintiff is a "consumer" as defined by California Civil Code § 1761(d), who purchased one or more Shock Collar Products. The Shock Collar Products are "goods" within the meaning of the CLRA.

73.    Defendant is a "person" under Cal. Civ. Code § 1761(c).

74.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

75.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

76.    Defendant violated and continues to violate the CLRA by making express and implied representations and by failing to disclose material facts as described above when they knew, or should have known, that the purchase and use of the Shock Collar Products cause harm to Class members' household pets.

77.    Defendant further violated the CLRA by representing on the product packaging and other marketing materials that the Shock Collar Products are "safe and effective" and are "harmless" for household pets.

78.    Pursuant to § 1782(d) of the CLRA, Plaintiff and the Class seek a court order enjoining Defendant's above-described wrongful acts and practices and for restitution and disgorgement. Any purely legal remedy is inadequate because no amount of monetary damages alone could fully compensate Plaintiff and the Subclass for the severe harm to household pets likely to be caused by Defendant's Shock Collar Products, including the risk of severe physical pain and injuries, including skin ruptures and inflammations, infections, skin burns and bruising, as well as undue anxiety, confusion, and depression, which can lead to gastrointestinal disorders and irreversible changes in the pets' heart rate and respiration. Without adequate disclosures of these extraordinary risks to Plaintiff and the Class's household pets, continued marketing and sale of Defendant's Shock Collar Products are nearly certain to cause severe harm to Plaintiff and the Class's household pets.

79.    Pursuant to § 1782 of the CLRA, Plaintiff will notify Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and

1   demand that Defendant rectify the problems associated with the actions detailed

2   above and give notice to all affected consumers of Defendant's intent to so act.

3       80.   If Defendant fails to rectify or agree to rectify the problems associated

4   with the actions detailed above and give notice to all affected consumers within 30

5   days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiff reserves

6   the right to amend this complaint to add claims for damages, as appropriate.

7       81.   Notwithstanding any other statements in this Complaint, Plaintiff does

8   not seek monetary damages in connection with his CLRA claim and will not do so

9   until the applicable thirty-day period has passed.

10      82.   Pursuant to § 1780(d) of the CLRA, attached as Exhibit A is the

11  affidavit providing that this action has been commenced in the proper forum.

**SECOND CLAIM FOR RELIEF**
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
*On Behalf of Plaintiff Hernandez and the Class*

15      83.   Plaintiff re-alleges and incorporate by reference the allegations

16  contained in the paragraphs above as if fully set forth herein.

17      84.   Plaintiff brings this claim individually and on behalf of the Class

18  against Defendant.

19      85.   The California False Advertising Law ("FAL") prohibits any statement

20  in connection with the sale of goods "which is untrue or misleading."

21      86.   Plaintiff, individually and on behalf of the Class, has standing to pursue

22  this claim because he suffered injury in fact and has lost money or property as a

23  result of Defendant's actions, as described above.

24      87.   Defendant's conduct with respect to the labeling, advertising, and sale

25  of Shock Collar Products that such products are "safe and effective" and "harmless"

26  are false and deceptive statements in light of the overwhelming evidence of the

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

1   unreasonable dangers that Shock Collar Products pose to Plaintiff and the Class

2   members' pets.

3       88.    Defendant knew, or reasonably should have known, that the challenged

4   safety and effectiveness claims were untrue or misleading.

5       89.    Defendant's advertising and marketing representations were false,

6   misleading, and deceptive as set forth in detail above. Defendant also concealed

7   material information from consumers. Defendant's misrepresentations and omissions

8   alleged herein deceive or have the tendency to deceive the general public regarding

9   the Shock Collar Products fitness for ordinary consumer use.

10       90.    Defendant's misrepresentations and omissions alleged herein were the

11   type of misrepresentations that are material, *i.e.*, a reasonable person would attach

12   importance to them and would be induced to act on the information in making

13   purchase decisions.

14       91.    Defendant's misrepresentations and omissions alleged herein are

15   objectively material to a reasonable consumer, and therefore reliance upon such

16   misrepresentations may be presumed as a matter of law.

17       92.    At the time Defendant made the misrepresentations and omissions

18   alleged herein, Defendant knew or should have known that they were untrue or

19   misleading and acted in violation of the FAL.

20       93.    Unless restrained by this Court, Defendant will continue to engage in

21   untrue and misleading advertising in violation of California law.

22       94.    As a result, Plaintiff and each member of the Class has been injured,

23   has lost money or property, and is entitled to relief. Plaintiff and the Class seeks

24   restitution, injunctive relief, and all other relief permitted under the FAL.

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**THIRD CLAIM FOR RELIEF**
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
***On Behalf of Plaintiff Hernandez and the Class***

95.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

97.     Plaintiff has standing to pursue this claim because he has suffered injury in fact and has lost money or property as a result of Defendant's actions as described above. All Class Members overpaid for the Shock Collar Products due to Defendant's misrepresentations or concealment that such products are not "safe and effective" and "harmless."

98.     The California Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

99.     Defendant engaged in business acts and practices deemed "unlawful" under the UCL, because Defendant falsely advertised the Shock Collar Products as "safe and effective" and "harmless" to household pets, when in fact the Shock Collar Products damage Plaintiff and the Class and are dangerous to their pets, in violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; The Federal Food, Drug, and Cosmetic Act, 28 U.S.C. §§ 301 *et seq.* and 21 C.F.R. §§ 101 *et seq.*; and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875, *et seq.*

100.     Defendant's actions as alleged herein constitute a "fraudulent" practice because, by representing that the Shock Collar Products are "safe and effective" and "harmless" to household pets, Defendant's conduct was likely to deceive consumers. Defendant's failure to disclose these facts constitutes a material omission in

**Class Action Complaint**
**Case No. 5:22-cv-01861**

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

violation of the UCL.

101.   Defendant's actions as alleged herein constitute an "unfair" practice because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Radio Systems' customers. The harm caused by Defendant's wrongful conduct outweighs any utility of such conduct and has caused, and will continue to cause, substantial injury to Plaintiff and the Class (and their household pets). Defendant could and should have chosen one of many reasonably available alternatives, including disclosing that the Shock Collar Products are harmful to household pets, eliminating the harm caused by the Shock Collar Products, or removing the Shock Collar Products from the market.

102.   Additionally, Defendant's conduct was "unfair" because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including the False Advertising Law, the Federal Food, Drug, and Cosmetic Act, and the California Sherman Food, Drug, and Cosmetic Law.

103.   Had Plaintiff and other Class members known of the dangerous properties of the Shock Collar Products, they would not have purchased the Shock Collar Products, would have paid less for them, or would have discontinued their use. Plaintiff and Class members have a property interest in their household pets.

104.   Plaintiff, individually and on behalf of the Class, seeks an injunction enjoining Defendant from engaging in the unlawful conduct alleged in this claim and requiring Defendant to fully disclose the risks associated with the use of Shock Collar Products, to discontinue their sale with the deceptive and misleading claims, and other appropriate equitable relief, including but not limited to improving its safety and effectiveness disclosures. Any purely legal remedy is inadequate because no amount of monetary damages alone could fully compensate Plaintiff and the Class for the severe harm to household pets likely to be caused by Defendant's

**Class Action Complaint**
**Case No. 5:22-cv-01861**

Shock Collar Products, including the risk of severe physical pain and injuries, including skin ruptures and inflammations, infections, skin burns and bruising, as well as undue anxiety, confusion, and depression, which can lead to gastrointestinal disorders and irreversible changes in the pets' heart rate and respiration. Without adequate disclosures of these extraordinary risks to Plaintiff and the Class's household pets, continued marketing and sale of Defendant's Shock Collar Products are nearly certain to cause severe harm to Plaintiff and the Class's household pets.

105.   Plaintiff and the Class also seek restitution of all money and property lost as a result of Defendant's acts in violation of the UCL.

### PRAYER FOR RELIEF

106.   Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, and the following remedies:

A.   An Order certifying this as a class action, appointing Plaintiff and their counsel to represent the class, and requiring Defendant to pay the costs of class notice;

B.   An Order enjoining Defendant from labeling, advertising, or packaging the Shock Collar Products identified herein as "safe and effective" and "harmless" as alleged herein;

C.   An Order compelling Defendant to conduct a corrective advertising campaign to inform the public that its Shock Collar Products were deceptively marketed;

D.   An Order requiring Defendant to pay restitution to restore funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL, or CLRA, plus pre- and post-judgment thereon;

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**

E.      Pre- and post-judgment interest;

F.      Costs, expenses, and reasonable attorneys' fees; and

G.      Any other and further relief the Court deems necessary, just, or proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: October 21, 2022

/s/ Amber L. Schubert_____

ROBERT C. SCHUBERT (S.B.N. 62684)
WILLEM F. JONCKHEER (S.B.N. 178748)
AMBER L. SCHUBERT (S.B.N 278696)
SCHUBERT JONCKHEER & KOLBE LLP
      Three Embarcadero Center, Suite 1650
      San Francisco, California 94111
      Telephone: (415) 788-4220
      rschubert@sjk.law
      wjonckheer@sjk.law
      aschubert@sjk.law

      *Attorneys for Plaintiff*

SCHUBERT JONCKHEER & KOLBE LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Class Action Complaint**
**Case No. 5:22-cv-01861**