UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1861 JGB (DTBx)** | Date | August 19, 2025 |
|---|---|---|---|
| Title | *Steven Hernandez v. Radio Systems Corporation* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 129); and (2) VACATING the August 25, 2025 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Steven Hernandez's ("Plaintiff" or "Hernandez") unopposed motion for preliminary approval of class action settlement. ("Motion," Dkt. No. 129.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of the Motion, the Court **GRANTS** the Motion and **VACATES** the August 25, 2025 hearing.

## I. BACKGROUND

On October 21, 2022, Hernandez, individually and on behalf of similarly situated individuals, filed a class action complaint against defendant Radio Systems Corporation ("Defendant" or "RSC"). ("Complaint," Dkt. No. 1.) On January 4, 2023, Plaintiff filed a first amended complaint. ("FAC," Dkt. No. 19.) On March 20, 2023, Plaintiff filed a second amended complaint. ("SAC," Dkt. No. 32.)

The SAC alleges three causes of action against RSC: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. (Id.) Plaintiff also seeks restitution and injunctive relief under the CLRA, FAL, and UCL. (Id.) On May 24, 2023, Defendant answered the SAC. ("Answer," Dkt. No. 38.)

On February 5, 2025, the parties filed a joint notice of settlement. ("Notice," Dkt. No. 124.) On May 19, 2025, Plaintiff filed this unopposed Motion for preliminary approval of class settlement. (See Motion.) In support of the Motion, Plaintiff filed the following documents:

- Proposed class action settlement agreement with attached exhibits (the "Agreement," Dkt. No. 129-3);
- Declaration of attorney Amber L. Schubert ("Schubert Decl.," Dkt. No. 129-2);
- Declaration of Steven Weisbrot, President and Chief Executive Officer for the class action notice and claims administration firm Angeion Group, LLC ("Angeion") alongside an attached exhibit ("Weisbrot Decl.," Dkt. No. 129-4); and
- Resume for Class Counsel's firm, Schubert Jonckheer & Kolbe LLP ("SJK Resume," Dkt. No. 129-5).

## II.    FACTUAL ALLEGATIONS

This putative class action involves Defendant's allegedly false and misleading advertising of its electric collar products for pets under the brand name PetSafe ("PetSafe" or "PetSafe Products"). (SAC ¶ 1.) Plaintiff purchased four PetSafe Products between February and May 2022.[1] (Id. ¶ 13.) Defendant manufactures, markets, and sells pet supplies and accessories, including PetSafe Products. (Id. ¶ 19.)

Plaintiff purchased PetSafe Products because he believed that they were safe, effective, harmless, and an appropriate tool for training household pets based on the packaging and advertising of the products. (Id. ¶ 14.) Plaintiff relied upon Defendant's representations that the PetSafe Products provided a "safe correction" to pets. (Id.)

Plaintiff used the PetSafe Products in accordance with the instructions provided in Defendant's product manuals. (Id. ¶ 16.) In May 2022, Plaintiff noticed that his dog's personality was more subdued than normal and that she had lost her appetite. (Id. ¶ 17.) The next day, Plaintiff identified a sticky residue and a foul burning smell around his dog's neck, and discovered that a patch of fur was missing from her neck. (Id.) Plaintiff's veterinarian identified holes in the dog's neck that coincided with the electrode inserts in the PetSafe Products. (Id.) After the dog's injury, Plaintiff observed that his dog was more timid and scared than usual. (Id.) Plaintiff immediately stopped using the PetSafe Products. (Id.)

Plaintiff alleges that Defendant "fail[ed] to disclose the safety risks, including physical and psychological harm these devices pose to the household pets, and the cruelty behind the fact that the household pet is being painfully electrocuted." (Id. ¶ 33.) Defendant's claims that the

---

[1] Plaintiff purchased (1) one PetSafe Pet Pawz Away Outdoor Barrier on February 25, 2022, for which he paid $109.95; (2) one PetSafe Pawz Away Extra Outdoor Pet Barrier Transmitter on April 30, 2022, for which he paid $78.95; (3) one PetSafe Pawz Away Extra Receiver Collar on April 22, 2022, for which he paid $54.95; and (4) one PetSafe Pawz Away Extra Indoor Barrier on May 10, 2022, for which he paid $54.95. (Id. ¶ 13.)

PetSafe Products are "safe" and "harmless" are false and misleading because they (a) misrepresent the dangers and risks of severe physical harm and injury to pets associated with the use of the PetSafe Products; (b) misrepresent the dangers and risks of psychological damage, including anxiety, stress, and depression, to pets associated with the use of the PetSafe Products; (c) misrepresent the dangers and risks of increased aggression and behavioral problems in pets associated with the use of the PetSafe Products; and (d) misrepresent that the PetSafe Products are humane or are recommended by industry experts. (Id. ¶ 31.)

Had Plaintiff known that the PetSafe Products were not safe and harmless, he would not have purchased them or would have paid substantially less for them. (Id. ¶ 18.) At present, he remains unsure whether the representation of the PetSafe Products are, and will continue to be, false and misleading. (Id.) In the future, Plaintiff would be willing to purchase PetSafe Products if they were in fact safe, harmless, and humane. (Id.)

### III.     LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[2] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

---

[2] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

## IV. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

Plaintiff seeks certification of the proposed settlement class for purposes of the Agreement. (Motion at 15-19.) The Agreement defines the proposed settlement class (hereafter, "Settlement Class" or "Settlement Class Member(s)") as follows: "all persons who purchased one or more of the [PetSafe] Products in the State of California between October 1, 2018 and October 31, 2022. Excluded from the Settlement Class are governmental entities; RSC, any entity in which RSC has a controlling interest, and RSC's officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns; and all judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff." (Agreement § KK.) The Court first addresses the Rule 23(a) requirements, then turns to the Rule 23(b) requirements.

### A. Requirements of Rule 23(a)

#### 1. Numerosity

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity, but 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Here, based on retail sales data produced by third-party retailers, RSC sold approximately 98,000 PetSafe products in California during the class period. (Motion at 15.) Accordingly, the Court concludes that the numerosity requirement is satisfied. See Hawkins v. Kroger Co., 337 F.R.D. 518, 533 (S.D. Cal. 2020) ("common sense dictates that the number of persons who purchased the [the defective product] at issue [during the class period] is greater than 40"); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 533 (C.D. Cal. 2011) ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").

#### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Here,

Plaintiff and the Settlement Class share common questions of law and fact arising from Defendant's alleged misrepresentations on packaging for PetSafe products that Plaintiff and the Settlement Class were exposed to and relied on. (See Motion at 15-16.) "California has recognized that an injury exists under the UCL, FAL, and CLRA where a consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'" See Bruno, 280 F.R.D. at 535. Further, "[n]umerous courts have recognized that a claim concerning alleged misrepresentations on packaging to which all consumers were exposed is sufficient to satisfy the commonality requirement because it raises the common question of whether the packaging would mislead a reasonable consumer." Broomfield v. Craft Brew All., Inc., 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018); Bruno, 280 F.R.D. at 535-36. Accordingly, Plaintiff has established commonality.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiffs need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020.

Here, Plaintiff's claims are typical of those of the Settlement Class because he purchased the same or similar products as the Settlement Class, viewed the same or substantially similar representations, and seeks to recover damages under the same legal theories. (See Motion at 17.) This Court has also found that the PetSafe products "appear[] to operate in essentially the same way, contain the same or similar representations, and Plaintiff's theory of liability is the same across all the products." (Dkt. No. 37 at 18.) In sum, Plaintiff's claims are "reasonably co-extensive" with absent class members' claims. See In re POM Wonderful LLC Marketing & Sales Pracs. Litig., 2012 WL 4490860, at *6 (C.D. Cal. 2012) (finding typicality where "the named Plaintiffs, like the absent members of the class, relied upon Pom's representations and made a purchase they otherwise would not have made"). Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and his counsel have any conflicts of interest with any class member and whether the proposed class representative and his counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiff or Plaintiff's counsel have a conflict with other Settlement Class Members. Plaintiff's counsel, Amber L. Schubert, has substantial experience in class-action litigation, including California false-advertising cases, and has been appointed as class counsel in similar cases. (See Motion at 17-18; SJK Resume.) Further, Plaintiff devoted substantial time to this case by assisting counsel in preparing the Complaints, communicating with counsel about case developments, responding to written discovery requests, gathering and producing documents, and sitting for a deposition. (See Motion at 17-18; Schubert Decl. ¶ 41.) Accordingly, the Court concludes that Plaintiff and Plaintiff's counsel will adequately represent the interests of the proposed class.

**B. Requirements of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff asserts the Agreement satisfies the requirements of Rule 23(b)(3). (Motion at 18-19.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

The Court concludes that, for purposes of settlement, common questions regarding Defendant's alleged misrepresentations on packaging for PetSafe products and the resultant harm to Plaintiff and the Settlement Class predominate over individualized issues. Courts in this district also routinely hold that common issues predominate in false-advertising cases where class members were exposed to the same or similar statements on the product's package. See, e.g., Wiener v. Dannon Co., 255 F.R.D. 658, 668-71 (C.D. Cal. 2009) (predominance met where class members were exposed to representations on product package regarding clinically proven health benefits of yogurt products); Johnson v. Gen. Mills, Inc., 275 F.R.D. 282, 288-89 (C.D. Cal. 2011) (predominance met where class members were exposed to representations on product package regarding digestive benefits of yogurt product). Here, Plaintiff has demonstrated that the Settlement Class was exposed to a series of uniform misrepresentations. (See Motion at 19.) As such, the Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

> (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Here, Plaintiff argues that "[b]ecause the Settlement Class Members number in the thousands, classwide resolution in a single action is efficient." (Motion at 19); see also Mullins v. Premier Nutrition Corp., 2016 WL 1535057, at *8 (N.D. Cal. 2016) ("Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution."); In re PostMeds, 2024 WL 4894293, at *3 (holding that superiority was satisfied because the "judicial economy achieved through common adjudication makes class action a superior method for adjudicating the proposed class's claims."). Accordingly, the Court concludes that the superiority requirement is satisfied.

## V.     SETTLEMENT AGREEMENT

The Court incorporates by reference the definitions provided in the Agreement; all terms defined therein shall have the same meaning in this order.

### A. The Settlement Class

The Agreement provides for the certification of a Settlement Class defined as: "all persons who purchased one or more of the [PetSafe products] in the State of California between October 1, 2018 and October 31, 2022. Excluded from the Settlement Class are governmental entities; RSC, any entity in which RSC has a controlling interest, and RSC's officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns; and all judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff." (Agreement § KK.)

### B. Settlement Benefits

Under the Agreement, RSC will establish a non-reversionary common fund (the "Settlement Fund") of $1.9 million. (Id. § MM.) Notice costs, administration expenses, attorneys' fees and costs, and any service award to Plaintiff awarded by the Court will be

deducted from the fund.  (Id. § U).  The balance (the "Net Settlement Fund") will be applied to pay valid claims.  (Id. § 5.)

**A.  Distribution of Net Settlement Fund**

Settlement Class Members who submit Valid Claims will be entitled to Cash Payments for each Class Product they purchased during the Class Period.  (Id.)  Settlement Class Members may submit a claim for a Cash Payment of $30.00 for each Bark Collar Product, $35.00 for each Barrier Product, $90.00 for reach In-Ground Fence Product, and $140.00 for each Wireless Fence Product purchased during the relevant period.  (Id. at 2.1.2.)  Cash Payments to Settlement Class Members who submit Valid Claims are subject to a pro rata increase if the total value of Valid Claims is less than the Net Settlement Fund or a pro rata decrease if the total payments to Claimants would otherwise exhaust the Net Settlement Fund.  (Id. § 2.1.3.)  Settlement Class Members who submit Claims for more than three Class Products will be required to submit proof of purchase, subject to reasonable verification by the Settlement Administrator.  (Id. § 2.1.4.)

**C.  Class Notice**

Within thirty days of Preliminary Approval, (1) RSC will provide the Settlement Administrator with the names, addresses, and email addresses for all members of the Settlement Class for whom it has records based on direct sales to consumers, and (2) Third-Party Retailers who have agreed to furnish Settlement Class Members' contact information will provide the Settlement Administrator with the names, addresses, and email addresses for all members of the Settlement Class for whom they have sales records.  (Id. § 4.3.)

The Settlement Administrator will email each member of the Settlement Class for whom it has an email address a copy of the Email Notice.  (Id. § 4.4.3.)  The Settlement Administrator may send additional reminder Email Notices to Settlement Class Members who have not submitted Claims as reasonably necessary at the direction of Class Counsel.  (Id.)  Amazon.com, Inc. will also email notice to each member of the Settlement Class who purchased a Class Product through Amazon and for whom it has an email address.  (Id. § 4.4.5.)

The Settlement Administrator will establish and maintain a Settlement Website at petsafesettlement.com.  (Id. § 4.4.1.)  The Settlement Website will be optimized for viewing on both mobile devices and personal computers.  (Id.)  The Settlement Website will include the Notice, the Settlement Agreement, the operative Second Amended Complaint and RSC's Answer thereto, the Preliminary Approval Order, Plaintiff's Motion for Attorneys' Fees and Expenses and Service Award, Plaintiff's Motion for Final Approval of Class Action Settlement, a set of frequently asked questions, and information on how to object or request exclusion, as well as contact information for Class Counsel and the Settlement Administrator.  (Id.)  The Settlement Website will include a readily accessible means for members of the Settlement Class to electronically submit a Claim Form.  (Id.)

The Settlement Administrator will establish a toll-free telephone number where members of the Settlement Class can obtain automated assistance in filing a Claim and receive instructions for accessing settlement information, the Claim Form, and case documents. (Id. § 4.4.2.)

The Settlement Administrator will mail each member of the Settlement Class the Postcard Notice if it (1) does not have an email address for the Settlement Class Member or (2) it sent an Email Notice that was returned as undeliverable. (Id. § 4.4.4.) For each Postcard Notice returned by the U.S. Postal Service with a forwarding address, the Settlement Administrator will remail the Postcard Notice to the forwarding address. (Id.)

The Settlement Administrator will provide notice to Settlement Class Members for whom it does not have contact information through a media campaign targeted to consumers who purchased one or more of the Class Products in California. (Id. § 4.4.6.) This campaign will deliver at least 70% reach through programmatic display ads, paid social media, and search-engine marketing. (Id.) Class Counsel will also issue a Press Release providing notice of the Settlement, a link to the Settlement Website, and contact information for the Settlement Administrator. (Id. § 4.6.) The Press Release will be issued through PR Newswire and posted on the Settlement Website and Class Counsel's website. (Id.)

Pursuant to the CLRA and Cal. Gov. Code § 6064, the Settlement Administrator will place a quarter-page advertisement in the USA Today California Regional Edition once per week for four consecutive weeks. (Id. § 4.4.7.)

**D. Opt-Outs**

Any person or entity who would otherwise be a member of the Settlement Class who wishes to be excluded from the Settlement Class must notify the Settlement Administrator in writing of that intent by submitting an Opt-Out form, available on the Settlement Website, either by (1) U.S. mail postmarked no later than the Exclusion Deadline or (2) submission on the Settlement Website no later than the Exclusion Deadline, which is 60 days after the Notice Date. (Id. § 6.)

Each Request for Exclusion must be signed and contain the person or entity's full name, address, telephone number, and email address (if any), the name and number of the case, and a statement indicating they request to be excluded from the Settlement Class. (Id. § 6.2.)

**E. Objections**

The Settlement Website and Long-Form Notice will advise Settlement Class Members of their right to object to the Settlement. (Id. § 7.1.) Any Settlement Class Member who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or to the requested Attorneys' Fee and Expense Award or Service Awards must submit a valid and timely Objection. (Id. § 7.2.) Each Objection must be signed by the Settlement Class Member and (1) state the full name, address, telephone number, and email address (if any) of the Objector and any counsel

representing the Objector; (2) identify the case name and number; (3) include information sufficient to show that the Objector is a Settlement Class Member; (4) provide a statement stating the specific reasons for the Objection, accompanied by any legal support known to the Objector or Objector's counsel; and (5) state whether the Objector or Objector's counsel intends to personally appear at the Final Approval Hearing.  (Id. § 7.3.1-3.5.)  Objections must be submitted by the Objection and Exclusion Deadline, which is 60 days after the Notice Date.  (Id. § 7.4.)

### F.  Attorneys' Fees, Costs, Expenses, and Service Award

Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation expenses, together with a service award for Plaintiff, at least 35 days before the due date for objections.  (Id. § 9.2.)  Class counsel expects to apply for a fee of up to 33 1/3% of the common fund.  (Id. § 9.1.)  Class counsel's total lodestar, through May 19, 2025, is approximately $1.8 million using current rates, representing approximately 2,400 hours of work on this matter.  (Schubert Decl. ¶ 40.)  For instance, if Class Counsel were to submit its fee application now, the multiplier corresponding to the maximum award of 33 1/3% of the fund would be approximately 0.35.  (Motion at 8.)

Class Counsel will also seek reimbursement of reasonable case expenses, which include expert witness fees.  (Agreement § 9.1.)  Class Counsel's current expenses are approximately $380,000.  (Schubert Decl.¶ 40.)  The parties have reached no agreement on the amount of attorneys' fees or expenses to be paid from the settlement fund.  (Agreement § 9.3.)  Class Counsel also intends to apply for a service award of up to $10,000 for Mr. Hernandez.  (Id. § 10.)  Plaintiff devoted substantial time to this case, including by assisting counsel in preparing the Complaints, communicating with counsel about case developments, responding to written discovery requests, gathering and producing documents, and sitting for a deposition.  (Schubert Decl.¶ 41.)

### G.  Release of Claims

There will be customary releases by Plaintiff and the Settlement Class Members of all claims, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising out of the facts underlying the action and concerning one or more of the Class Products, against RSC, its past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers and assigns of each of the foregoing).  (Agreement § 11.)  The Released Persons shall include RSC, its past or present parents, subsidiaries, divisions, affiliates, stockholders, officers, directors, insurers, employees, agents, attorneys, any of their legal representatives (and the predecessors, heirs, executors, administrators, successors, purchasers and assigns of each of the foregoing), and any retailers who sold the Class Products at issue.  (Id.)

//

### H. Settlement Administrator

Class Counsel retained Angeion as the Settlement Administrator. (See Schubert Decl. ¶ 42.) Class Counsel selected Angeion based on its qualifications and competitive bid. (Id.) Administrative costs will be paid from the settlement fund. (Id.) The Settlement Administrator has estimated that all settlement notice and administration duties required by the Settlement Agreement will cost approximately $150,000. (Weisbrot Decl. ¶ 54.) In addition to managing the notice program and receiving and processing claims and opt-outs, Angeion will maintain the dedicated settlement website containing links to the notice, claim form, and all other relevant settlement documents. (Id. ¶ 45.)

## VI. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (citation modified). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in favor of settlement of class actions. Class Plaintiffs, 955 F.2d at 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (citation modified). Here, the parties engaged in two rounds of motion to dismiss briefing, extensive discovery practice, the filing of Plaintiff's motion for class certification supported by voluminous evidence and expert testimony, briefing on competing Daubert motions seeking to exclude expert testimony, and briefing on Defendant's

motion for summary judgment. (Motion at 1.) RSC also produced approximately 30,000 pages of documents, third parties subpoenaed by Plaintiff produced additional materials, and 8 depositions occurred, including several expert depositions. (Id.) "This well-developed record gave the parties a thorough understanding of the strengths and weaknesses of their positions." (Id.)

Settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." Adoma v. Univ. of Phx., Inc., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). The Court finds that each side has a clear idea of the strengths and weaknesses of its respective cases and concludes that the extent of discovery and the stage of proceedings weigh in favor of preliminary approval.

**B. Amount Offered in Settlement**

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

For the purposes of settlement, the PetSafe products are divided into four distinct categories: Bark Collar Products, Barrier Products, In-Ground Fence Products, and Wireless Fence Products. (Agreement § 2.1.) For Bark Collar Products, Settlement Class Members may submit a claim for a Cash Payment of $30.00; for Barrier Products, Settlement Class Members may submit a claim for a Cash Payment of $35.00; for In-Ground Fence Products, Settlement Class Members may submit a claim for a Cash Payment of $90.00; and for Wireless Fence Products, Settlement Class Members may submit a claim for a cash payment of $140.00. (Id.) To help deter fraudulent claims and ensure that the relief goes to eligible people, Settlement Class Members who submit claims for more than three Class Products will be required to submit proof of purchase, subject to reasonable verification by the Settlement Administrator. (Id. § 2.1.4.) Further, the per-product amounts established in the Plan of Allocation correspond to the relative retail prices and price differences of each product and provide an approximately 50% refund of the retail sales price for each product. (Schubert Decl. ¶ 45.)

Although the settlement amount may represent a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). In In re Mego, the Ninth Circuit considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate. Id. Here, the settlement represents 37% of Plaintiff's most optimistic damages estimate as calculated by Plaintiff's experts, and given the difficulties posed to each individual putative class member of pursuing his or her claim, the Court finds the settlement amount is

potentially fair. (See Motion at 2); see also Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding that a settlement fund which equaled to 27% of the defendant's total potential liability exposure weighed in favor of final approval); Knapp v. Art.com, Inc., 283 F. Supp. 3d 823, 833 (N.D. Cal. 2017) ("The 'amount offered' gives class members the opportunity to recover 42 percent of the average total potential recovery. . . [and] [c]onsidering the risks in continued litigation, the amount is fair."); Fleming v. Impax Lab'ys Inc., 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); In re MyFord Touch Consumer Litig., 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery).

**C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation**

Although Plaintiff is confident in the strength of his case, RSC has denied liability from the outset. (Motion at 14); see, e.g., Spann v. J.C. Penney Corp., 314 F.R.D. 312, 326 (C.D. Cal. 2016) (preliminarily approving a class action settlement even though "defendant would undoubtedly challenge" plaintiff's damages "methodology and the use of statistical analysis to calculate damages at all").

Nonetheless, the risk, expense, and complexity of further litigation is significant, and "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." Schaffer v. Litton Loan Servicing, LP, 2012 WL 10274679, at *11 (C.D. Cal. 2012). Plaintiff argues that he "face[s] substantial risks associated with the pending motion to certify the class, the pending motion for summary judgment, trial, and a likely appeal by a highly motivated [D]efendant in litigation concerning its primary product offerings." (Motion at 14); see also Aarons v. BMW of N. Am., LLC, 2014 WL 4090564, at *10 (C.D. Cal. 2014) ("In the absence of a settlement, it is very likely that this case could ultimately be decided at trial by a 'battle of the experts' over the existence of a [defect] . . . taking those issues to trial might be more challenging for [p]laintiffs than for [defendant], given complex technical nature of the [product].").

The Court believes the risk, expense, and likely duration of further litigation weigh in favor of preliminary approval. Without the Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long and expensive. Moreover, here, the "relief [] directly target[s] [] the harm suffered by the class and adequately redresses their injuries." See Shin v. Plantronics, Inc., 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31, 2020). Overall, these factors weigh in favor of preliminary approval.

**D. Experience and Views of Counsel**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v.

DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation modified). Here, based on Class Counsel's experience with consumer class-actions, including California false-advertising cases, Class Counsel believes "the proposed settlement is fair, reasonable, and adequate in light of the risks of continued litigation and merits the Court's approval." (Schubert Decl. ¶¶ 43-50; Motion at 18.) Such a recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Harbour v. California Health & Wellness Plan, 2024 WL 171192, at *5 (N.D. Cal. Jan. 16, 2024) (quoting Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) and In re Omnivision Techs., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009)). The Court finds this factor weighs in favor of preliminary approval.

### E. Collusion Between the Parties

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As contemplated by the Agreement, Class Counsel will move for a Service Award of up to $10,000 for Plaintiff Hernandez. (Agreement § 10.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego, 213 F.3d at 463. "The Ninth Circuit has emphasized that district courts must 'scrutiniz[e] all incentive awards [and service awards] to determine whether they destroy the adequacy of the class representatives.'" In re Facebook Internet Tracking Litig., 2022 WL 16902426, at *13 (N.D. Cal. Nov. 10, 2022) (quoting Radcliffe v. Experian Info. Sols., 715 F.3d 1157, 1163 (9th Cir. 2013)). In doing so, courts consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). The Court will ultimately determine whether the Service Award is appropriate in light of the class representative's role and responsibilities. Because the proposed Service Award is not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. See Rodriguez, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted). The Court instructs Plaintiff, when he moves for final approval, to provide a declaration attesting to the efforts he undertook in furtherance of the litigation. See Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1165 (9th Cir. 2013) (stating that there is a "serious question whether [a] class representative[] could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement when [the class representative] would receive $5,000" in an incentive award).

As for attorneys' fees, Class Counsel will move for an award of attorney fees up to one-third (33.33%) of the Settlement Fund (i.e., $1,900,000) and for the reimbursement of reasonable expenses. (Agreement § 9.1.) When deciding to award attorneys' fees and costs, the Court has

discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage-of-recovery method, the Ninth Circuit has found that a benchmark of 25% of the common fund is a reasonable attorneys' fee award.  Hanlon, 150 F.3d at 1029.  In deciding whether special circumstances justify a departure upward or downward from the 25% benchmark, courts typically consider (1) the size of the fund, (2) the quality of the results achieved, (3) the risk counsel undertook, (4) the skill required and the quality of work, (5) the contingent nature of the fee and the financial burden carried by the plaintiff, and (6) awards made in similar cases.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).  Here, Plaintiff's counsel's fee award request is high.  Plaintiff must provide documentation and legal argument to support the reasonableness of his fee request at the time he moves for final approval.  However, the amount requested does not raise any concerns regarding collusion.

**F.  Remaining Factors**

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.  Staton, 327 F.3d at 959 (citation modified).  At this stage, the Court cannot fully analyze the remaining factors.  For example, there is no governmental participant in this action.  Additionally, the Settlement Class Members have yet to receive notice of the Agreement and have not had an opportunity to comment or object to its terms.  The Court directs Plaintiff, in his motion for final approval, to provide briefing on these issues.

On balance the factors support preliminary approval of the Agreement.  Accordingly, the Agreement is potentially fair, adequate, and reasonable.

## VII.  CLASS NOTICE

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The Agreement selects Angeion as the Settlement Administrator because "the management team at Angeion has [collectively] overseen more than 2,000 class action settlements and distributed over $15 billion to class members."  (See Weisbrot Decl. ¶ 9.)  Angeion will provide notice via "email or mail to reasonably identifiable potential Settlement Class Members combined with a robust media campaign consisting of state-of-the-art targeted internet banner notice, social media notice, and a paid search campaign."  (Id. ¶ 19.)  The Notice Plan further provides for the implementation of a dedicated settlement website and toll-free telephone line where Settlement Class Members can learn about their rights and options pursuant to the terms of the Settlement.  (Id.)  Notice of the Settlement will also be published in USA Today's California Regional Edition.  (Id.)  Additionally, Amazon.com, Inc. will email notice to each member of the Settlement Class who purchased a PetSafe Product through

Amazon and for whom it has an email address. (Agreement § 4.4.5.) Thereafter, Angeion will send reminder Email Notices to all identified Settlement Class Members who have not submitted claims. (Id. § 4.4.3.) The Notice and Claim Forms are all attached as exhibits to the Agreement. (See Agreement, Exhibits B-F.)

The Court finds that the form and content of the proposed Notice and Claim Forms are reasonable and fair and adequately advise Settlement Class Members of the terms of the proposed settlement; of their right to payment under the settlement; of their right to file a Request for Exclusion; of the preliminary court approval; of the timing and procedural requirements for excluding oneself from the Settlement Class and/or objecting to the settlement; and of the date of the final approval hearing. Thus, the Court finds that the Notice Program clearly comports with all constitutional requirements, including those of due process. The Court further finds that the Notice Plan constitutes an effective method of notifying Settlement Class Members of their rights with respect to this action and settlement.

## VIII.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval. The Court **ORDERS** as follows:

1. The Agreement is preliminarily approved as potentially fair, reasonable, and adequate for members of the Settlement Class. However, in their motion for final approval, Plaintiff shall address the concerns raised above.

2. The following Settlement Class is certified for settlement purposes only:

   All persons who purchased one or more of the following PetSafe Products in the State of California between October 2018 and October 2022:

   Stay & Play Wireless Fence with Replaceable Battery Collar; Stay & Play Wireless Fence for Stubborn Dogs; Stay & Play Compact Wireless Fence; Wireless Pet Containment System; Pawz Away Mini Pet Barrier; Pawz Away Indoor Pet Barrier; Pawz Away Outdoor Pet Barrier; InGround Fence; Stubborn Dog In-Ground Fence; Little Dog Deluxe InGround Fence; Deluxe In-Ground Cat Fence; YardMax Rechargeable In-Ground Fence; Basic In-Ground Fence; Rechargeable In-Ground Fence; YardMax Cordless In-Ground Fence; Classic In-Ground Fence; Rechargeable Bark Control Collar; Lite Rechargeable Bark Collar; Bark Collar; and Basic Bark Control Collar.

   Excluded from this Settlement Class are governmental entities, RSC, any entity in which RSC has a controlling interest, and RSC's

      officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns. Also excluded from the class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

3. The Court appoints Amber L. Schubert of Schubert Jonckheer & Kolbe LLP to serve as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiff Steven Hernandez is appointed as the representative of the Settlement Class for purposes of settlement only.

5. The Court appoints Angeion as the Settlement Administrator.

6. The Court approves, as to form and content, the Notice and Claim Forms.

7. The Court approves the methods for giving notice of the Agreement to the Settlement Class, as stated in the Agreement and the Motion.

8. No later than 30 days after the entry of this Order, Defendant shall provide the Settlement Class List to the Settlement Administrator.

9. No later than 45 days after the entry of this Order, the Settlement Administrator shall issue Notice to the Settlement Class Members ("Notice Date").

10. The Objection and Exclusion Deadline shall be 60 days after the Notice Date.

11. The parties responses to Objections shall be due 14 days after the Objection and Exclusion Deadline.

12. The Close of Claim Period shall be 60 days after the Notice Date.

13. The parties' briefs and other papers in support of final approval of the proposed settlement shall be filed with the Court no later than 35 days prior to the Final Approval Hearing.

14. The Final Approval Hearing shall be held on **Monday, January 26, 2026**, at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division, located at 3470 12th Street, Riverside, California 92501. The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to Settlement Class Members. After the Final Approval Hearing, the Court may enter a Final Approval Order in accordance with the Settlement Agreement that will adjudicate the rights of all Settlement Class Members.

15. As of the date this Order is signed, all dates and deadlines associated with the Action shall be stayed, other than those pertaining to the administration of the settlement.

16. If for any reason the Court does not execute and file an order granting Final Approval of the Settlement, or if the Effective Date, as defined in the Settlement Agreement, does not occur for any reason whatsoever, the Settlement Agreement and all evidence and proceedings had in connection therewith shall be dismissed without prejudice to the status quo ante rights of the parties in this action, as set forth in the Settlement Agreement, and this Order shall be rendered null and void and shall be vacated.

17. The August 25, 2025 hearing is **VACATED**.

**IT IS SO ORDERED.**