UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-1861 JGB (DTBx)** | Date | February 13, 2026 |
|---|---|---|---|
| Title | ***Steven Hernandez v. Radio Systems Corporation*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 138); and (2) GRANTING-IN-PART Plaintiff's Motion for Attorneys' Fees (Dkt. No. 137) (IN CHAMBERS)**

Before the Court is Plaintiff Steven Hernandez's ("Plaintiff" or "Hernandez") unopposed motion for final approval of class action settlement and motion for award of attorneys' fees and plaintiff's service award.  ("Final Approval Motion," Dkt. No. 138; "Fees Motion," Dkt. No. 137 (together, "Motions").)  After considering the papers filed in support of the Motion and the arguments of counsel at the January 26, 2026, hearing, the Court **GRANTS** the Final Approval Motion and **GRANTS-IN-PART** the Fees Motion.

## I.   BACKGROUND

On October 21, 2022, Hernandez, individually and on behalf of similarly situated individuals, filed a class action complaint against defendant Radio Systems Corporation ("Defendant" or "RSC").  ("Complaint," Dkt. No. 1.)  On January 4, 2023, Plaintiff filed a first amended complaint.  ("FAC," Dkt. No. 19.)  On March 20, 2023, Plaintiff filed a second amended complaint.  ("SAC," Dkt. No. 32.)

The SAC alleges three causes of action against RSC: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.  (Id.)  Plaintiff also seeks restitution and injunctive relief under the CLRA, FAL, and UCL.  (Id.)  On May 24, 2023, Defendant answered the SAC.  ("Answer," Dkt. No. 38.)

On February 5, 2025, the parties filed a joint notice of settlement. ("Notice," Dkt. No. 124.) On May 19, 2025, Plaintiff filed an unopposed motion for preliminary approval of class settlement. ("Preliminary Approval Motion," Dkt. No. 129.) On August 19, 2025, the Court granted the Preliminary Approval Motion. ("Preliminary Approval Order," Dkt. No. 134.)

On November 24, 2025, Plaintiff filed the Fees Motion and on December 22, 2025, Plaintiff filed the Final Approval Motion, both of which are unopposed. (See Motions.) On January 12, 2026, Plaintiff filed a response to objections to the class settlement, which indicated no objections had been submitted. (Dkt. No. 139.)

The Court held a hearing on the Motion on January 26, 2026.

## II. SETTLEMENT AGREEMENT

The Court incorporates by reference the definitions provided in the settlement agreement ("Agreement," Dkt. No. 129-3); all terms defined therein shall have the same meaning in this order.

### A. The Settlement Class

The Agreement defines the Settlement Class as: "all persons who purchased one or more of the [PetSafe products] in the State of California between October 1, 2018 and October 31, 2022. Excluded from the Settlement Class are governmental entities; RSC, any entity in which RSC has a controlling interest, and RSC's officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns; and all judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff." (Agreement § KK.)

### B. Settlement Benefits

Under the Agreement, RSC will establish a non-reversionary common fund (the "Settlement Fund") of $1.9 million. (Id. § MM.) Notice costs, administration expenses, attorneys' fees and costs, and any service award to Plaintiff awarded by the Court will be deducted from the fund. (Id. § U). The balance (the "Net Settlement Fund") will be applied to pay valid claims. (Id. § 5.)

### C. Distribution of Net Settlement Fund

Settlement Class Members who submit Valid Claims will be entitled to Cash Payments for each Class Product they purchased during the Class Period. (Id.) Settlement Class Members may submit a claim for a Cash Payment of $30.00 for each Bark Collar Product, $35.00 for each Barrier Product, $90.00 for each In-Ground Fence Product, and $140.00 for each Wireless Fence Product purchased during the relevant period. (Id. at 2.1.2.) Cash Payments to

---

Settlement Class Members who submit Valid Claims are subject to a pro rata increase if the total value of Valid Claims is less than the Net Settlement Fund or a pro rata decrease if the total payments to Claimants would otherwise exhaust the Net Settlement Fund.  (Id. § 2.1.3.) Settlement Class Members who submit Claims for more than three Class Products will be required to submit proof of purchase, subject to reasonable verification by the Settlement Administrator.  (Id. § 2.1.4.)

**D.  Class Notice**

Pursuant to the Court's Preliminary Approval Order, Class Notice consisted of Email Notice to each member of the Settlement Class for whom the Settlement Administrator had an email address.  (Final Approval Notice at 6.)  The Settlement Administrator sent a total of 112,594 Email Notices to Class Members, with a total of 105,805 received, representing a 93.97% successful delivery rate.  (Id.)  The Settlement Administrator sent 14,800 Postcard Notices to unique addresses for which no email address was available and 4,444 Postcard Notices to addresses for which email notice could not be delivered, but for which mailing addresses were available.  (Id. at 6-7.)  With respect to the Supplemental Class List, the Settlement Administrator sent 6,259 Postcard Notices to unique addresses for which no email address was available, and 1,810 Postcard Notices to addresses for which email notice could not be delivered, but for which mailing addresses were available.  (Id. at 7.)  Of all Postcard Notices sent, as of December 22, 2025, a total of 2,676 were returned, 152 have been remailed to forwarding addresses, and 1,756 are in the process of being remailed to updated addresses identified through skip tracing.  (Id.)

On October 3, 2025, the Settlement Administrator commenced the four-week media notice plan comprised of programmatic display advertising, social media advertising via Facebook, Instagram, and Reddit, and a paid search campaign via Google.  (Id.)  On October 3, 2025, Class Counsel caused a press release announcing the settlement to be distributed via PR Newswire.  (Id.)  Beginning on October 3, 2025, the Settlement Administrator caused notice to be published in USA Today's California Regional Edition every Friday through October 24, 2025.  (Id.)

The Settlement Administrator created a Settlement Website on October 3, 2025.  (Id.) Claimants can access or download copies of the Long-Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, and other important settlement-related documentation. Settlement Class Members can submit a Claim Form or opt out of the Settlement through secure online portals on the Settlement Website, and they can send an email with any additional questions to a dedicated email address.  (Id. at 8.)

On October 3, 2025, the Settlement Administrator established a toll-free hotline dedicated to this case.  (Id.)  Amazon.com sent direct notice of the Settlement via email to its own customers. (Id.)
//
//

---

**CIVIL MINUTES—GENERAL**                 Initials of Deputy Clerk MG

### E. Opt-Outs

Any person or entity who would otherwise be a member of the Settlement Class who wished to be excluded from the Settlement Class had to notify the Settlement Administrator in writing of that intent by submitting an Opt-Out form, available on the Settlement Website, either by (1) U.S. mail postmarked no later than the Exclusion Deadline or (2) submission on the Settlement Website no later than the Exclusion Deadline, which was 60 days after the Notice Date. (Agreement § 6.)  The deadline was December 29, 2025.  (Final Approval Motion at 8.)

Each Request for Exclusion had to be signed and contain the person or entity's full name, address, telephone number, and email address (if any), the name and number of the case, and a statement indicating they request to be excluded from the Settlement Class.  (Id. § 6.2.)

### F. Objections

The Settlement Website and Long-Form Notice advised Settlement Class Members of their right to object to the Settlement.  (Id. § 7.1; Final Approval Motion at 8.)  Any Settlement Class Member who wished to object to the fairness, reasonableness, or adequacy of the Settlement, or to the requested Attorneys' Fee and Expense Award or Service Awards had to submit a valid and timely Objection.  (Id. § 7.2.)  Each Objection had to be signed by the Settlement Class Member and (1) state the full name, address, telephone number, and email address (if any) of the Objector and any counsel representing the Objector; (2) identify the case name and number; (3) include information sufficient to show that the Objector is a Settlement Class Member; (4) provide a statement stating the specific reasons for the Objection, accompanied by any legal support known to the Objector or Objector's counsel; and (5) state whether the Objector or Objector's counsel intends to personally appear at the Final Approval Hearing.  (Id. § 7.3.1-3.5.)  Objections had to be submitted by the Objection and Exclusion Deadline, which was 60 days after the Notice Date.  (Id. § 7.4.)

## III. DISCUSSION

### A. Class Certification

The Court previously certified the Class pursuant to Rule 23 for settlement purposes only.  (See Preliminary Approval Order at 4-7; 16); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.").  Nothing has been put forth to challenge or otherwise undermine the Court's certification. See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23 . . . and hereby reconfirms its order certifying a class.").  Accordingly, the Court reconfirms its order certifying the Class for the purpose of final settlement approval.
//
//

### B.  Final Settlement Approval

#### 1.  CAFA Notice Requirements

A court cannot grant final approval of a class action settlement until each defendant complies with the notice requirements under CAFA.  <u>See</u> 28 U.S.C. § 1715(d).  Specifically, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve" notice of the proposed settlement "upon the appropriate State official of each State in which a class member resides and the appropriate Federal official."  <u>Id.</u> § 1715(b).

Here, in compliance with CAFA, the Settlement Administrator caused timely notice ("CAFA Notice") of the Settlement to be sent to the Attorneys General of all states and territories, as well as the Attorney General of the United States pursuant to 28 U.S.C. § 1715 on May 28, 2025.  (Final Approval Motion at 6.)  More than 90 days have passed since the date of the CAFA notice and there is no indication that there were any objections.  (<u>Id.</u>)  Accordingly, the Court finds that RSC complied with CAFA's notice requirements.

#### 2.  Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3), like this one, must satisfy the notice provisions of Rule 23(c)(2) and, upon class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice" of particular information.  <u>See</u> Fed. R. Civ. P. 23(c)(2)(B).

As discussed above, the Court-approved Class Notice was disseminated to Class Members through E-mail Notice and Postcard Notice.  (Final Approval Motion at 6-9.)  The Settlement Administrator received fifteen opt-outs, and zero objections—this results in 57,732 participating Class Members as of December 22, 2025.  (<u>Id.</u> at 8; January 26, 2026, Hearing.)

Based on the Final Approval Motion and its supporting documents, the Court finds that the Class Notice and notice procedure fairly and adequately informed Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, as well as Class Members' right to exclude themselves from and object to the proposed settlement.  Accordingly, the Court finds that the Class Notice was the best notice practicable under the circumstances.  Rule 23(c)(2)(B).

#### 3.  Fair, Reasonable, and Adequate

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."  <u>Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.,</u>

688 F.2d 615, 624 (9th Cir. 1982).  Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Here, the Court held a final approval hearing on January 26, 2026.

To determine whether the settlement is fair, reasonable, and adequate, courts consider several factors, including "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (internal citations omitted).  Moreover, the settlement may not be a product of collusion among the negotiating parties.  See In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  This list of factors is not exhaustive, and "different factors may predominate in different factual contexts."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### a. Strength of Case, and the Risk, Expense, Complexity, and Duration of Further Litigation

The strength of Plaintiff's case favors approval.  Plaintiff remains confident that he would have prevailed on the motions pending at the time of settlement, but "major impediments to a class recovery remained" had the case proceeded. (Final Approval Motion at 11.)  Without settlement, the parties would have to litigate the ultimate merits of the case—a "long, complex, and expensive" process.  Woodard v. Labrada, No. EDCV-16-00189-JGB-SP, 2019 WL 4509301, at *9 (C.D. Cal. Apr. 23, 2019).  Additionally, even had Plaintiff prevailed in the pending motions, trial and post-trial appeals would have extended the duration of the case.  Therefore, the risk, expense, complexity, and likely duration of further litigation also favors approval.

### b. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation.  In re Mego, 213 F.3d at 459.

The Agreement provides for a non-reversionary cash Settlement Fund of $1.9 million. (Agreement ¶ MM.)  This represents 37% of the total estimate recovery and includes damages for a type of collars that were at risk of being excluded from the class had the case proceeded.  (Final Approval Motion at 13.)  The parties identify the recovery as well within the typical range of recovery in class settlements.

Although the settlement amount may represent a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'"  In re Mego, 213

F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.
1982)).  In In re Mego, the Ninth Circuit considered the difficulties in proving the case and
determined the settlement amount, which was one-sixth of the potential recovery, was fair and
adequate.  Id.  Given the difficulties posed to each individual of pursuing his or her claim, the
Court finds the settlement amount is potentially fair.  See also Fleming v. Impax Lab'ys Inc.,
2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (finding that 12.5% estimated reasonably
recoverable damages "is in a range consistent with the median settlement recovery in class
actions").

### c.  Extent of Discovery Completed and the Stage of Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in
sufficient investigation of the facts to enable the court to intelligently make an appraisal of the
settlement."  Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal
citations omitted).  Here the parties engaged in "extensive discovery practice" which involved
"discovery regarding class certification issues, briefing on competing Daubert motions seeking to
exclude expert testimony, and briefing on defendant's motion for summary judgment." (Final
Approval Motion at 13.)  Defendant provided Plaintiff's counsel with "approximately 30,000
pages of documents, third parties subpoenaed by plaintiff produced additional materials, and
eight depositions occurred, including several expert depositions." (Id.)

Because Plaintiff participated in discovery, the Court finds each side has a clear idea of
the strengths and weaknesses of its respective cases and concludes that the extent of discovery
and the stage of proceedings weigh in favor of approval.  See Lewis v. Starbucks Corp., 2008 WL
4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as
long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their
cases."); In re Mego, 213 F.3d at 459 ("[F]ormal discovery is not a necessary ticket to the
bargaining table where the parties have sufficient information to make an informed decision about
settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing benefits of
settlement are diminished if postponed until discovery is completed and approving of targeting
early discovery at information needed for settlement negotiations).

### d.  Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely
acquainted with the facts of the underlying litigation."  Nat'l Rural Telecomms. Coop.
v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks
omitted).  Class Counsel is presently lead counsel in approximately ten class actions and serves
on the executive committee in ten other class actions. (January 26, 2026, Hearing.)  Counsel's
declaration in support of final settlement approval indicates that her firm has extensive
experience as lead and co-lead counsel in a substantial number of class action and securities
derivatives actions dating back decades. (Dkt. No. 137-2, Ex. A.)  Plaintiff's Motion indicates
that Class Counsel considers this "an exceptional settlement for the class in the face of

significant litigation risks." (Mot. at 1.)  Given Class Counsel's experience with class action litigation, Class Counsel's favorable view of the settlement is compelling.

### e.  Governmental Participant

A court should consider "the presence of a governmental participant" in deciding whether to grant final approval of a settlement.  Staton, 327 F.3d at 959.  Here, there is no governmental participant, so this factor does not apply.  (Final Approval Motion at 14.)

### f.  Class Members' Reaction to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529.  Here, there were only fifteen requests for exclusion by a Class Member and zero objections to the settlement.  (Final Approval Motion at 14; January 26, 2026, Hearing.)  Given the low number of opt-outs and the absence of objections, the Court finds that this factor weighs in favor of approval.

### g.  Collusion Between the Parties

Finally, the Court reaffirms that there has been no collusion between the parties.  (See Preliminary Approval Order at 14-15.)  The settlement was negotiated at arms-length under the supervision of an experienced mediator.  (Final Approval Motion at 1.)  This process is in accordance with Rule 23(e)(2)(B).

All of the factors above weigh in favor of approval, and the Court finds that the Agreement is fair, reasonable, and adequate.  The Court hereby **GRANTS** the Final Approval Motion.

## C.  Attorneys' Fees, Costs, Expenses, and Service Award

Under the Agreement, Class Counsel's actual attorneys' fees; costs and expenses; and Plaintiffs' service award will be paid from the Settlement Fund.  (Fees Motion at 1.)  Class Counsel seeks $633,270 in attorneys' fees and $376,792.28 in costs (Id. at 1-2.)  Additionally, Class Counsel seeks a service award for Plaintiff of $10,000.  (Id. at 5.)  Further, the Court notes that the notice and settlement administration costs, which are also paid from the Settlement Fund, are most recently estimated at $215,263.47.  (Agreement ¶¶ 9-10; Dkt. No. 139-1.)

The attorneys' fees requested represent approximately 33.33% of the total value of the settlement fund.  (Fees Motion at 2.)  Compared to the amount of fees calculated under the lodestar method, the sum of attorneys' fees requested would result in a negative multiplier of .34.  (Dkt. No. 137-4 at 1.)  As the Court noted in the Preliminary Approval Order, Plaintiff's counsel's 33.33% request is high.  (Preliminary Approval Order at 15.)  Under the percentage-of-

recovery method, the Ninth Circuit has found that a benchmark of 25% of the common fund is a reasonable attorneys' fee award. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). In deciding whether special circumstances justify a departure upward or downward from the 25% benchmark, courts typically consider (1) the size of the fund, (2) the quality of the results achieved, (3) the risk counsel undertook, (4) the skill required and the quality of work, (5) the contingent nature of the fee and the financial burden carried by the plaintiff, and (6) awards made in similar cases. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Class Counsel provided a description of litigation tasks undertaken and a summary of firm professionals' hourly rates and hours worked on this matter. (See Dkt. No. 137-2.) Class Counsel did not provide a detailed accounting of the hours spent on each matter. Given the size of the fund and the substantial Class Counsel costs and notice and settlement administration costs, and Class Counsel's failure to provide evidence supporting an upward adjustment, it would be inequitable to Class Members to award more than the 25% benchmark for attorneys' fees in this case. As such, the Court will award $475,000 in attorneys' fees to Class Counsel, which represents 25% of the $1.9 million Settlement Fund. The Court awards $376,792.28 in costs.

Class Counsel argues that Plaintiff's service award is appropriate because Plaintiff's "substantial efforts were crucial in prosecuting the action and achieving the settlement, and he was actively involved at every step." (Fees Motion at 21.) Plaintiff assisted counsel in preparing the complaints, was in regular communication with Class Counsel about case developments, responded to written discovery by searching for and producing materials and documents, provided detailed interrogatory responses, sat for a deposition, submitted a detailed declaration in support of class certification, and reviewed, authorized, and signed the Settlement Agreement. (Id.) Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). The Court finds that an incentive award of $10,000 for Plaintiff is fair and reasonable.

## IV.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiff's Final Approval Motion is **GRANTED**. The parties shall perform their obligations pursuant to the terms of the Agreement and this Order.

2. Plaintiffs' Fees Motion is **GRANTED-IN-PART**. Class Counsel shall receive an award of $475,000 in attorney's fees, and $376,792.28 in costs. Plaintiff shall receive a service award in the amount of $10,000.

3. All Class Members who did not validly and timely request exclusion from the settlement have released their claims against the Released Parties, as defined in the Agreement.

4.   Except as to any Class Members who have validly and timely requested exclusion, this action is **DISMISSED WITH PREJUDICE**, with all parties to bear their own fees and costs, except as set forth herein and in the prior orders of this Court.

5.   Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Agreement itself.

6.   Judgment shall be entered accordingly.

**IT IS SO ORDERED.**